IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **THOMAS P. POWERS**, | Civil Action |
| Plaintiff, | |
| v. | |
| **COIL TRAN, LLC** d/b/a Hobart Electronics, LLC, an Indiana limited liability company, **CBR MANAGEMENT SERVICES, INC.** d/b/a Creative Business Resources, an Arizona corporation, **NORATEL NORTH AMERICA, LLC f/k/a** Noratel North America, Inc., a North Carolina limited liability company, and **NORATEL CANADA, INC.**, an Ontario (Canada) business corporation, | No. |
| Defendants. | JURY DEMAND |

## COMPLAINT

By his attorneys of record the plaintiff, THOMAS P. POWERS ("Plaintiff" or "Powers"), complains of the defendants, COIL TRAN, LLC d/b/a Hobart Electronics, LLC ("Hobart Electronics" or "Hobart"), an Indiana limited liability company, CBR MANAGEMENT SERVICES, INC d/b/a Creative Business Resources ("CBR"), an Arizona corporation, NORATEL NORTH AMERICA, LLC f/k/a Noratel North America, Inc. ("NTNA"), a North Carolina limited liability company, and NORATEL CANADA, INC. ("NTCAN"), an Ontario (Canada) business corporation, a Minnesota corporation. Pleading hypothetically and in the alternative, Plaintiff alleges as follows:

I. **NATURE OF THE ACTION**

1. This action seeks to redress the deprivation of, and interference with, Plaintiff's rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §

12101, *et seq.*, as amended by the ADA Amendments Act of 2008. This action seeks declaratory, equitable and injunctive relief, compensatory and punitive damages, attorneys' fees and costs.

2. Plaintiff also brings supplemental, state law claims for retaliatory discharge, breach of contract and promissory estoppel.

## II. THE PARTIES

3. Plaintiff is a United States citizen and resident of Lake County, Indiana.

4. Hobart Electronics is an Indiana corporation that: a) has its principal office at or near 160 S. Illinois Street, Hobart, IN 46342; and b) whose registered agent, Cogency Global, Inc., is located at or near 9221 Crawfordsville Road, Indianapolis, IN 46324.

5. CBR is an Arizona corporation that: a) has its principal office at or near 1500 E. Bethany Home Road, Suite 200, Phoenix, AZ 85014; and b) whose registered agent, Unisearch, Inc., is located at or near 9221 Crawfordsville Road, Indianapolis, IN 46324.

6. NTNA is a North Carolina corporation that: a) has its principal office at or near 13663 Providence Road, Suite 345, Weddington, NC 28104; and b) whose registered agent, Cogency Global, Inc., is located at or near 212 S. Tryon Street, Suite 1000, Charlotte, NC 28281.

7. NTCAN is an Ontario (Canada) business corporation that: a) has its principal office at or near 267 Matheson Boulevard East, Suite 2, Mississauga, Ontario L4 1X8 Canada; and b) whose registered office is located at or near the same address.

8. In 2019, NTNA acquired Hobart Electronics. (*See* https://www.noratel.com/company/history/ ) (last accessed 2/21/23).

9. After the acquisition of Hobart Electronics by NTNA in 2019, Hobart's management answered to NTNA with regard to the day-to-day operation of the company; as of the acquisition in 2019 and thereafter, hiring and firing decisions at Hobart were ultimately controlled by NTNA.

10. The defendants are part of an integrated global company, DiscoverIE PLC, which is based in Great Britain; DiscoverIE designs and manufactures specialized electronic components for industrial use.

11. DiscoverIE had acquired NTNA in about 2014.

12. DiscoverIE had acquired NTCAN, or its predecessor, in about 2016.

13. By 2021, NTCAN had become heavily integrated with NTNA, and was involved in day-to-day management decisions that affected Hobart's operations, including hiring and firing decisions.

14. By 1983, Hobart Electronics had moved its headquarters from Chicago to its current location of 160 S. Illinois Street, Hobart, IN 46342.

15. At all times relevant to this action, Hobart was in the business of manufacturing and selling, in the United States and abroad, custom electronic transformers, inductors, assemblies and power supplies.

16. Before the defendants fired him on March 15, 2021, Powers had been employed by Hobart for more than 40 years.

17. Powers had been Hobart's sales manager from 1983 until the termination of his employment.

18. For most, if not all, of his tenure as Hobart's sales manager, Plaintiff worked at the defendants' Hobart, Indiana facility located at or near 160 S. Illinois Street, Hobart, IN 46342.

19. When the defendants fired Powers, he had been working at the referenced Hobart, Indiana facility for many years.

20. CBR is a professional employment organization ("PEO"), with whom the other defendants contract in order to provide them with human resources services and concomitant advice.

21. Further, at all times relevant to this action, in accordance with CBR's role as a PEO in relation to the defendants, the plaintiff and most, if not all, of the defendants' other employees were: a) jointly employed by CBR and one or more of the defendants; and/or b) were employees of CBR "on paper," even through the economic reality was such that the defendants ultimately controlled the terms and conditions of their employment.

### III. JURISDICTION AND VENUE

22. At all times relevant to this action, the Hobart Electronics conducted business in the Northern District of Indiana.

23. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

24. The unlawful employment practices described herein were committed within Lake County, Indiana; accordingly, venue in the Northern District of Indiana is proper pursuant to 28 U.S.C. §1391(b).

## IV. ALLEGATIONS GIVING RISE TO CAUSES OF ACTION

25. In 2016, Powers was involved in an automobile accident that resulted in a serious back injury and left him with a chronically painful condition.

26. In order to manage this pain, Powers's doctor prescribed opioid pain medication, which enabled him to continue performing his job duties notwithstanding the high level of pain.

27. In October 2020, Powers underwent surgery to implant a spinal cord stimulator for his back pain; as a result of the surgery, he began the process of weaning himself off his prescribed opioid medication.

28. In January 2021, Powers contracted COVID-19 and, as a result, was off work ill from January 15, 2021, through February 11, 2021; the illness also hampered his efforts to wean himself off his opioid medication.

29. On February 12, 2021, Hobart's controller, Steven Orto, requested a meeting with Powers, Christopher Buser (NTNA's president and chief executive officer) and Steve Nolan (NTCAN's managing director).

30. At the February 12th meeting, Orto asserted that Powers was "addicted" to opioids, claimed that this was affecting the plaintiff's job performance, and asserted that Powers would not stop taking them by himself.

31. Orto then advised Powers that, if he wanted to keep his job with Hobart, he would be required to participate in an employee assistance program ("EAP") and stop taking the prescribed opioids.

5

32. Orto gave Powers a document entitled "Last Chance Document" ("LCD") that set forth the conditions with which he needed to comply in order to keep his job. Specifically, the LCD stated that Powers was required to:

   a. Participate in the EAP not later than February 19, 2021;

   b. Abstain from using alcohol or controlled substances while performing his job duties;

   c. Submit to unannounced periodic drug and/or alcohol screening as determined by Hobart; and

   d. Participate in a therapy program if recommended by the EAP counselor.

33. The LCD further provided that it would remain in effect for two years and that, if Powers failed to comply with any of its requirements, he would be fired immediately.

34. At no time before, during or after the February 12th meeting did the defendants ask Powers to speak or communicate with his physicians or other healthcare providers to determine whether the EAP (and certain provisions of the LCD) was medically justified or appropriate.

35. Instead, the defendants forced Powers into the EAP without the benefit of any input or information from his physicians or healthcare providers; the defendants impermissibly substituted their judgement for that of Plaintiff's physicians and medical service providers.

36. In fact, there was no medical reason to require Powers to participate in the EAP.

37. Nevertheless, because he wanted to keep his job, Powers asked Orto for contact information for the company's EAP. Orto responded that the EAP was a

"government program," and that he (Orto) did not know the contact information for the EAP.

38. On February 18, 2021, in an effort to keep his job, and despite the fact that Hobart still had not provided him with information regarding the EAP, Powers checked into a "full" residential rehabilitation program at the Gateway Foundation.

39. Several days later, Powers was advised that his healthcare insurance carrier would not cover the cost of the Gateway program because he did not satisfy the diagnostic criteria as having an addiction, and that he would be moved to a "partial" hospitalization program ("PHP").

40. On February 24, 2021, the defendants finally provided contact information for the EAP; and Powers contacted the EAP.

41. Powers successfully completed the PHP and, on Tuesday, March 2, 2021, he received a certificate of completion which stated that he "exceeded the expectations of the program," completed all assignments, abided by all program rules, was a positive influence on his peers, and that he was tested randomly with negative results. The program facilitator also offered to answer any questions or concerns Hobart might have.

42. Also on March 2, 2021, Orto told Powers that he (Orto) wanted him to return to work the following day and that Powers had to undergo a drug test in order to return to work. Powers responded that his counselor wanted him to remain off for the rest of the week.

43. On March 8, 2021, Powers underwent a drug test at an off-site facility and then went to work. At 10:30 a.m. that day, he was escorted into a closed-door meeting with

Orto and Tito Chowdury (Hobart's president and chief executive officer). Buser and Nolan participated in the meeting via telephone.

44. At the March 8th meeting, Orto asked Powers a number of questions that had nothing to do with his recent completion of the PHP or his ability currently to perform his job duties.

45. Eventually, at the March 8th meeting, Nolan advised Powers to go home and that the defendants would decide what action to take and let him know.

46. A week later, on March 15, 2021, Powers received a letter informing him that his employment was terminated. According to the letter, Powers was fired because his "use of prescription medication coupled with unacceptable job performance demonstrate[d] a clear inability to perform essential job functions despite reasonable accommodations."

47. The letter further stated that Hobart had given Powers the LCD to help him "get off the opioid prescriptions," and that "[t]he Company's thinking was that . . . your poor work performance was being impacted by an addi[c]tion to prescription medicines." The letter contained a number of incorrect statements and assertions, including that Powers had "checked out [of the rehabilitation program] after just three (3) days."

48. The letter also asserted that Powers had violated the terms of the LCD by testing positive on March 8th for "drug usage – prescription," and that Powers's statement that day that he was no longer on prescription drugs for back pain was "incorrect."

49. Even assuming Powers tested positive for a "prescription drug," such drug was not an opioid and was therefore irrelevant to any alleged "abuse" of a prescribed opiate. Moreover, Hobart and the drug-testing facility have denied Plaintiff's request to see a copy of the March 8th drug test results.

8

50. At all times relevant to this action, Powers had performed the essential functions of his job satisfactorily or better and, in the alternative, prior to February 12, 2021:

    a. The defendants had never formally disciplined or reprimanded Powers;

    b. The defendants had never formally disciplined or reprimanded Powers for any infraction that would warrant the termination of his employment under the defendants' stated policies and procedures;

    c. The defendants had never formally disciplined or reprimanded Powers for any infraction that would warrant the termination of his employment under the defendants' de facto policies and procedures;

    d. As a matter of practice and policy, the defendants failed to enforce their stated and de facto disciplinary policies against top performing employees, including Powers;

    e. As a matter of practice and policy, the defendants failed, and fail, to enforce their stated and de facto disciplinary policies against employees other than Powers, which employees have engaged in, and engage, in substantially the same conduct as Powers, but which other employees did not use (or were/are not known to use) prescription opiates; and/or

    f. As a matter of practice and policy, the defendants failed, and fail, to enforce their stated and de facto disciplinary policies against employees other than Powers, which employees have engaged in, and engage, in substantially the same conduct as Powers, but which other employees have not sought treatment for chronic pain.

## COUNT I
### (Violation of the ADA: Unlawful Discrimination Culminating in Wrongful Termination of Employment)

51. Plaintiff re-alleges the foregoing paragraphs.

52. On September 23, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on the bases of disability and

retaliation, in violation of the ADA against: a) Hobart Electronics; b) CBR[1]; c) NTNA; and d) NTCAN.

53. On December 15, 2022, the EEOC issued a "Determination and Notice of Rights" with regard to each of the charges referenced above.

54. This action was filed within 90 days of December 15, 2022.

55. At all times relevant to this action, each of the following defendants was/is engaged in commerce and had/has in excess of 15 employees: a) Hobart Electronics; b) CBR; c) NTNA; and NTCAN.

56. At all times relevant to this action, as an individual suffering from a spinal injury and chronic pain, Powers was: a) an individual with a disability as defined by the ADA; or b) an individual whom the defendants perceived to be disabled.

57. In spite of his disability, as alleged above, Powers was able to perform the essential functions of his job satisfactorily or better.

58. By engaging in the foregoing actions, Respondents have violated the ADA.

59. The defendants forced Powers to participate in the EAP—which constitutes a "medical examination" under the ADA. However, the defendants did not have a reasonable belief, based on objective evidence, that Powers had a medical condition which would impair his ability to perform the essential functions of his job, or that he posed a

---

[1] Plaintiff filed this charge of discrimination (one of four, as indicated) at the EEOC against "Creative Business Resources, LLC" but this appears to have been a misnomer; Plaintiff's continuing investigation now leads him to believe the correct name was simply "Creative Business Resources." In Indiana, "Creative Business Resources, LLC" was an assumed name for "Can-Am Financial, Inc.," whose corporate charter in Indiana was withdrawn on July 14, 2003. "Creative Business Resources, L.L.C." was an Arizona limited liability company whose corporate charter became inactive on February 22, 2006. However, "Creative Business Resources" is an active trade name for CBR Management, Inc., an Arizona corporation that has been registered in Indiana since January 18, 2005.

10

USDC IN/ND case 2:23-cv-00086-JVB-JEM   document 1   filed 03/07/23   page 11 of 20

threat due to a medical condition; therefore, the defendants were prohibited from requiring Powers to participate in the EAP.

60. Additionally, the defendants' decision to fire Powers immediately after he successfully completed the EAP program, establishes that the decision was based on his use of prescribed medication—which the defendants repeatedly and falsely characterized as "abuse" and "overuse"; this conclusion is further supported by the fact that the defendants required Powers to undergo a drug test—which was yet another impermissible medical examination under the ADA—prior to his return to work on March 8, 2021.

61. Further, it appears that Hobart shared information regarding Plaintiff's use of prescribed medications with persons outside of Hobart, namely, the NTNA and NTCAN employees who participated in multiple conversations and communications regarding Plaintiff's use of medications and the decisions to require him to undergo the rehabilitation program, the subsequent drug test, and the decision to terminate his employment.

62. At no time did Powers give anyone at Hobart permission to share information regarding his medical conditions, or his use of prescribed medications, with persons outside the company; the ADA forbids such sharing or disclosure of an employee's medical information, and Hobart's decision to do so with Noratel personnel violated the ADA.

63. The defendants subjected Powers to unequal terms and conditions of employment and, ultimately, unlawfully terminated his employment because: a) he was disabled; or b) they perceived him to be disabled.

64. The defendants' actions and omissions violated the ADA.

65. The defendants' actions and omissions were willful and wanton in that they were undertaken in reckless disregard for Plaintiff's rights under the ADA.

11

66. As a direct and proximate result of the foregoing unlawful actions, Plaintiff has suffered damages and losses, including but not limited to lost wages and benefits, mental anguish, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and reputational injury.

67. Plaintiff is entitled to relief under the ADA including without limitation back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, punitive damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that Plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## COUNT II
### (Violation of the ADA: Retaliation)

68. Plaintiff re-alleges the foregoing paragraphs.

69. Powers had requested accommodation for his disability in that he had asked for a flexible schedule in order to allow him to deal with flare-ups of his spinal pathology and chronic pain, and with certain side affects of his prescription medications (including but not limited to opiates).

70. Prior to February 12, 2021, the defendants had in fact accommodated Powers with regard to the requests described above.

71. Despite such accommodation, at all times relevant to this action Powers performed the essential functions of his job satisfactorily or better.

72. Powers had also asked for accommodation relative to his contraction of COVID-19 and/or the impact it had on his ability to coordinate his efforts to wean himself off prescription opiates after the placement of his spinal cord stimulator.

73. The defendants fired Plaintiff in retaliation for his having requested reasonable accommodation for his disability.

74. The defendants' actions and omissions violated the ADA.

75. The defendant's actions and omissions were willful and wanton in that they were undertaken in reckless disregard for Plaintiff's rights under the ADA.

76. As a direct and proximate result of the defendant's retaliation in violation of the ADA, Plaintiff was damaged in that he was denied the reasonable accommodation he requested, lost his job, lost wages and benefits, and suffered other pecuniary losses.

77. As a direct and proximate result of the defendants' retaliation in violation of the ADA, Plaintiff was damaged in that he was caused to suffer humiliation and severe emotional distress.

78. Plaintiff is entitled to relief under the ADA including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that Plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## COUNT III
**(Common Law Retaliatory Discharge)**

79. Plaintiff re-alleges the foregoing paragraphs.

80. Public policy mandates, or should mandate, that employers must not retaliate against employees seeking treatment for chronic pain and/or employees seeking to wean themselves from usage of prescription opiates.

81. The defendants retaliated against Plaintiff for having sought treatment for his chronic pain and/or for having attempted to wean himself from usage of prescription opiates.

82. As a direct and proximate result of the defendants' tortious actions and omissions, Plaintiff was damaged in that he lost his job, lost wages and benefits, and suffered other pecuniary losses.

83. As a direct and proximate result of the defendant's tortious actions and omissions, Plaintiff was damaged in that he was caused to suffer humiliation and severe emotional distress.

84. Plaintiff is entitled to relief under the common law including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, punitive damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that Plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## COUNT IV
**(Breach of Contract)**

85. Plaintiff re-alleges the forgoing paragraphs.

86. A true and correct copy of the LCD is attached as Exhibit A.

87. The LCD was an enforceable contract between Plaintiff and the defendants.

88. Plaintiff complied with the terms of the LCD.

89. The defendants' breached the LCD by, among other things, terminating Plaintiff's employment even through he had complied with the terms of the LCD.

90. As a direct and proximate result of the defendant's breach of the contract, Plaintiff was damaged in that he lost his job, lost wages and benefits, and suffered other pecuniary losses.

91. As a direct and proximate result of the defendant's breach of the contract, Plaintiff was damaged in that he suffered reputational damage, and was caused to suffer humiliation and severe emotional distress.

92. Plaintiff is entitled to relief under the common law including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, punitive damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that Plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## COUNT V
### (Promissory Estoppel)

93. Plaintiff re-alleges paragraphs 1 through 82.

94. The LCD constituted a promise to Plaintiff by Defendant.

95. The plaintiff reasonably relied upon the terms of the LCD.

96. The defendants knew or should have known that Plaintiff would rely upon the terms of the LCD.

97. Plaintiff complied with the terms of the LCD.

98. The defendants were therefore estopped from terminating Plaintiff's employment.

99. Plaintiff relied upon the defendants' promise to his detriment.

100. Plaintiff is entitled to make-whole relief under the common law including back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages for emotional distress among other things, consequential damages, the value of lost fringe benefits, pre- and post-judgment interest, a gross-up amount for any increased taxes that Plaintiff is required to pay based on the timing and amount of monies recovered in this action, attorneys' fees and costs.

## V. PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment in his favor and against the defendants, and for the following relief:

A. A declaration that the defendants' actions described herein constitute violations of the ADA;

B. A permanent injunction that retrains the defendants from engaging in the type of actions, described above, that violate the ADA in the future;

C. Reinstatement to the position in which he was employed prior to his termination, including any promotions and advancements he would have enjoyed but for his termination;

D. Back pay, the monetary value of lost fringe benefits, front pay in lieu of reinstatement and a make-whole award to compensate for any additional taxes (or other charges) for which he may be liable as the result of the timing of the payment of any monies recovered in this action;

E. Compensatory, consequential and punitive damages;

F. Attorneys' fees and costs; and

G. Such further and additional relief, including equitable relief, that this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

                      Respectfully submitted,

                      /s/Paul Luka
                      Attorney for Plaintiff

Paul Luka
paul@mendozalaw.net
MENDOZA LAW, P.C.
120 S. State Street · Suite 400
Chicago, IL 60603
(312) 971-7309

Telly Stefaneas, Esq.
telly_stefaneas@me.com
53 West Jackson Blvd., Ste. 1215
Chicago, Illinois 60604
(312) 675-0075
(*Pending Admission*)

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he served the attached pleading and civil cover sheet on all parties of record via the Court's CM/ECF system and filed summons/es accordingly.

                      /s/Paul Luka
                      Attorney for Plaintiff

# EXHIBIT A



To: Tom Powers
From: Hobart-Electronics, LLC
Date: 02/12/2021
Re: Employee Assistance Program (EAP) Agreement

We have been working with you accommodating self-admitted drug dependency issues for several years. You admitted to having a dependency of Opioids and other prescription medications and drugs for many years, due to chronic pain caused from injury in an automobile accident. Your reliance on these drugs has affected your work performance - which alternates between periods of high and low productivity - and has resulted in instances of poor judgment and bad decisions, which jeopardize our business. This has also created problems with co-worker interaction and places an undue burden on co-workers who must cover for you and do your job. Over three months ago you had surgery to install a nerve stimulator to eliminate the chronic pain, you have stated that it has greatly eliminated the chronic pain. You said the goal was to eliminate your dependency on the Opioids. You shared a desire to wait two weeks before rehabilitation, which we accommodated. It has now been months since your surgery, and you profess you are attempting to withdraw on your own. We are very concerned and believe that you have a dependency on opioids that is negatively impacting your professional life.

Because you are a valued employee, *Hobart Electronics, LLC* is giving you a final opportunity, as a condition of continued employment. In order to retain employment with *Hobart Electronics, LLC,* you are required to comply with the following conditions:

1. Participate in the employee assistance program (EAP). Schedule your first EAP consultation no later than one week from the date of this agreement. Follow-through with recommended treatment plan as advised by the EAP counselor. Understand that this may mean you will continue to visit the counselor, or you may have to seek professional treatment from another source. Any associated costs with your treatment will be your responsibility. Treatment should be scheduled during nonworking hours, when possible.

2. Abstain from using alcohol or controlled substances while performing your responsibilities as the Sales Manager including, but not limited to, time spent in the workplace as well as other company events.

3. Submit to unannounced periodic, follow-up drug and/or alcohol screening as determined by *Hobart Electronics, LLC*. All expenses for this testing will be paid for by *Hobart Electronics, LLC*. Refusal to submit to testing, or positive test results in violation of the drug and alcohol policy, will result in immediate termination.

4. Participate in authorized group therapy program if recommended by the EAP counselor.

5. Meet all expected job performance standards and general Company policies as established for all employees.

6. You must agree to not contact employee's, customers, vendors, or agents during your time away from the company during your rehabilitation. Any contact with the company should be through Steve

Orto, Tito Chowdhury. You will not have access to the server, email, or building during your recovery period.

These conditions of employment will remain in effect for two years from today. If you do not comply with any one of these conditions, your employment will be terminated.

However, this is not to be construed as a guarantee of employment and does not alter your status as an "at-will" employee.

**I have reviewed and agree to the conditions of this agreement. In addition, I give my consent for Hobart Electronics, LLC Company to obtain updates from the Employee Assistance Program (EAP) to confirm my participation and attendance in sessions as recommended by the EAP counselor in determining compliance with the terms of this agreement.**

_____     _3/5/21_____
Employee                                   Date
UNDER PROTEST

_____     _3/5/21_____
President – Hobart Electronics, LLC    Date
CFO

**After reading this agreement, I have decided that I do not want to work at Hobart Electronics, LLC under the terms and conditions outlined above. I understand that by refusing to accept these terms, I am voluntarily terminating my employment.**

_____     _____
Employee                                   Date